UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANTE EDOARDO DALY,

                Plaintiff,

       -against-

WESTCHESTER COUNTY BOARD OF
LEGISLATORS,

              Defendant.

**MEMORANDUM OPINION
AND ORDER**

19-CV-04642 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Dante Edoardo Daly ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action against his former employer, the Westchester County Board of Legislators ("BOL"), pressing various claims associated with his termination in March 2018.

      Plaintiff filed his initial Complaint on May 20, 2019. (Doc. 2, "Compl.").[1] On February 11, 2020, Plaintiff filed his First Amended Complaint ("FAC") with leave of the Court. (Doc. 33, "FAC"). Days later, Plaintiff filed his Second Amended Complaint ("SAC"), the operative pleading at this juncture. (Doc. 35, "SAC").[2] The SAC alleges that the BOL discriminated against Plaintiff in violation of: (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.; (2) the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq*.; (3) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.; (4) the New

---

[1] The Court notes that the Complaint is "sealed," but that in a June 6, 2019 Order Judge Stanton advised Plaintiff that he had failed to make the showing required to allow sealing. (Doc. 7 at 1-2). This is not a sealed case but, should Plaintiff wish for certain documents to be sealed or redacted moving forward, he is directed to comply with the applicable provisions of both this Court's Individual Rules and the Electronic Case Filings Rules & Instructions for the U.S. District Court for the Southern District of New York.

[2] The SAC, which utilizes the template form available on the Court's website and attaches a variety of documents in a single filing, is described in the associated docket entry as "(1ˢᵗ) Amended Complaint." To avoid confusion, the Court refers to that document, Plaintiff's second attempt at amending the Complaint, as the SAC. Moreover, for ease of reference, citations herein to Plaintiff's filings correspond to the pagination generated by ECF.

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*.; (5) the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8-101, *et seq*.; and (6) "All Applicable New York State Laws." (*Id*. at 4). The specific disability (or perceived disability) underlying Plaintiff's ADA and Rehabilitation Act claims are "Severe Musculoskeletal Disorder[,] lumbar disc disease, coronary artery disease, [and] osteoarthritis of the bilateral hips." (*Id*.).

The BOL filed its motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) on April 3, 2020. (Doc. 42; Doc. 45, "Def. Br."). Plaintiff opposed the motion by an e-mail dated on May 2, 2020 (Doc. 55, "Opp. Br."), and the motion was briefed fully with the filing of the BOL's reply on May 26, 2020 (Doc. 53, "Reply Br.").[3]

For the reasons set forth below, the BOL's motion to dismiss is GRANTED in part.

## **BACKGROUND**

Plaintiff's tenure as the BOL's employee began on September 29, 2014. (SAC at 9). Plaintiff was hired by Michael B. Kaplowitz ("Kaplowitz"), then Chairman of the BOL, to serve as the BOL's Director of Fiscal Affairs. (*Id*. at 9, 23). Plaintiff alleges that he was hired as an "at will" employee and served "at the pleasure of the BOL Chairman . . . ." (*Id*. at 9; *but see id*. at 23 (noting that Plaintiff served "at the pleasure of the Legislature," not the Chairman)). In this capacity, Plaintiff recounts that he had two supervisors: (1) Kaplowitz; and (2) Kaplowitz's Chief of Staff, Gary Friedman ("Friedman"). (*Id*. at 9; *but see id*. at 23 (advising that Plaintiff "report[ed] directly to the Chairman")). The appointment was intended to last ten years. (*Id*. at 9).

As Director of Fiscal Affairs, Plaintiff "serv[ed] as a direct conduit of information to the Chairman and the full Board from any relevant institutional entity, resident[,] and community

---

[3] This matter was reassigned from Judge Stanton to Judge Karas on June 14, 2019, and subsequently reassigned from Judge Karas to me, after the BOL filed its motion to dismiss, on April 16, 2020.

advocate that would [i]mpact the fiscal condition of Westchester County." (*Id*.). Plaintiff maintains that he prepared financial analyses for the BOL, took "initiative" in reviewing the municipality's contracts, "work[ed] collaboratively on . . . a bipartisan budget coalition," recommended ways to "trim[] . . . budgets and increase revenue," and raised "sharp questions during weekly" meetings. (*Id*. at 9-11). Throughout his employment, Plaintiff "was never criticized for . . . lack of financial analysis skill[s] . . . by any County employee." (*Id*. at 9). Furthermore, while Plaintiff never received "a formal evaluation" regarding his performance, he insists that "Kaplowitz reviewed [his] performance on an ongoing basis and" that both Kaplowitz and the BOL's senior staff celebrated his professional contributions. (*Id*. at 9-10). In fact, Plaintiff maintains that Kaplowitz "had nothing but praise for [his] weekly . . . questions, financial performance analysis, County financial condition analysis, financial statement analysis, and financial analytics on behalf of [the] BOL." (*Id*. at 10). Plaintiff was "cheered" and "hugged" by coworkers, and there was speculation he would be named the Westchester County Budget Director. (*Id*. at 12-13).

Despite Plaintiff's stellar performance, he alleges that he reckoned with myriad health issues. Specifically, Plaintiff alleges that—while in the BOL's employ—he was "diagnosed with a herniated disc and stenosis" in 2015 and with "Severe Musculoskeletal Disorder" in 2017. (SAC at 11; *see also* Compl. at 11).[4] Plaintiff's health conditions caused him to experience "10+ cylinder of pain wrapping around [his] lower back, both hips, buttocks, anus, anal canal, and scrotum," and would manifest physically at the office as "heavily drenched shirts at work, paleness, [and]

---

[4] As Plaintiff proceeds *pro se*, the Court exercises its discretion to consider prior versions of the SAC to determine whether Plaintiff stated a claim. *See Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2020 WL 7342742, at *2 n.1 (S.D.N.Y. Dec. 14, 2020) (noting that when evaluating *pro se* complaints, "some courts will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]" (alterations in original, internal quotation marks omitted)); *Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018). The BOL considered prior versions of the pleading in preparing its papers as well. (Def. Br. at 3 n.4).

irregular breathing . . . ." (SAC at 12). As a result of these conditions, Plaintiff received "steroid injections from March 2017 through February 2018." (SAC at 12; *see also* Compl. at 12). Notwithstanding these obstacles, Plaintiff "had outstanding attendance and . . . productivity" for over three years and saved taxpayers "millions of dollars." (SAC at 12).

Nevertheless, faced "[w]ith increasing pain" and anticipating spinal fusion surgery in August 2018, Plaintiff requested "a closed[-]door meeting" with Friedman during "[t]he third week of December 2017" to inform his employer about his medical issues. (*Id.*; *see also* Compl. at 12). At that meeting, Plaintiff provided Friedman with the "exact information . . . regarding [his] 10+ pain and need for Spinal Fusion Surgery" and explained that he intended to "us[e] all of [his] . . . leave for upcoming steroid injections, doctor's appointments, and . . . surgery in August 2018 . . . ." (Compl. at 12; *see also* SAC at 12; Opp. Br. at 3). During this conversation, Friedman told Plaintiff that he would "inform the new Chief of Staff," Dennis Power ("Power"), about Plaintiff's medical issues and leave requests. (SAC at 12; Def. Br. at 4 (acknowledging that Power was the "new Chief of Staff")). Sometime thereafter, Benjamin Boykin ("Boykin") replaced Kaplowitz as the BOL Chairman and Power replaced Friedman as Chief of Staff. (*See* SAC at 13; Def. Br. at 4).

On February 2, 2018, Plaintiff met with Boykin and Power to discuss the duties associated with Plaintiff's position. (SAC at 14). According to Plaintiff, Boykin and Power tried to "pressure" Plaintiff into admitting that he was unable to "perform job duties requiring additional transportation and additional transportation physical strain." (*Id.*). Those duties, specifically, were "attending two 8 am monthly meetings as a guest with instructions not to speak, and [two] meetings requiring travel as a guest with instructions not to speak . . . ." (*Id.*). Under Kaplowitz's leadership, Plaintiff was able to perform these duties successfully not by attending the meetings physically but by "reviewing meeting minutes[] and having senior staff discussions . . . ." (*Id.*). Although the

additional travel associated with attending those meetings would cause "physical strain," given Plaintiff's ability to comply with his obligations through the modified approach permitted under Kaplowitz, Plaintiff refused to concede that he was unable to perform the duties of his position. (*Id.*). At some point that same day, Power tried to punch Plaintiff in the face, but Plaintiff blocked the blow. (*Id.* at 13). Sometime in February 2018, Plaintiff took eight days' leave as a result of contracting the flu. (*Id.* at 16; Opp. Br. at 4). Upon his return, Plaintiff avers that he faced unspecified "hostility" from Boykin. (SAC at 16).

On March 1, 2018, less than one month after Plaintiff refused to admit that he could not perform certain duties required of the Director of Fiscal Affairs, he was terminated. (*Id.* at 14). While Boykin acknowledged that Plaintiff had been with the BOL "a long time," he concluded that Plaintiff "lack[ed] the financial analysis skills" necessary for the position. (*Id.* at 14). Power, for his part, stated that the BOL was "going in a different direction" and that they would "see the reaction of [Plaintiff's] termination." (*Id.* at 15). During that same meeting, Plaintiff alleges that Power made a comment to the effect that Plaintiff's continued health insurance after termination "was critical." (*Id.*). The termination was effective as of 5:00 p.m. that day. (*Id.*).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d] must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel." *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (internal quotation marks omitted)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," the action must be dismissed "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL

3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Id.* at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).[5]

---

[5] The BOL filed four extraneous documents in support of its motion. Attached to Defense Counsel's Declaration were: (1) the SAC (Doc. 43-1, Cosgriff Decl. Ex. A); (2) a United States Equal Employment Opportunity Commission ("EEOC") Notice of Charge of Discrimination for Case No. 520-2018-04471, signed by Plaintiff on June 22, 2018 (Doc. 43-2, Cosgriff Decl. Ex. B, "EEOC Charge"); (3) a February 22, 2019 Right to Sue Letter to Plaintiff from the EEOC regarding Case No. 520-2018-04471 (Doc. 43-3, Cosgriff Decl. Ex. C, "Right to Sue Ltr."); and (4) Plaintiff's Aflac Application dated April 2, 2018 (Doc.43-4, Cosgriff Decl. Ex. D "Aflac Ltr."). At this stage, the Court considers the EEOC Charge and the Right to Sue Letter because: (1) they are integral to, and referred to within, the SAC; and (2) they are public records of which the Court may take judicial notice. (*See* SAC at 5-6, 8); *see also Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (explaining that "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence"); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting that, even when a document is not incorporated by reference, the Court may consider the document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint" (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *Clarke v. White Plains Hosp.*, No. 13-CV-5359, 2015 WL 13022510, at *3 (S.D.N.Y. Apr. 22, 2015) (noting that the Court may take judicial notice of EEOC charges and determinations), *aff'd*, 650 F. App'x 73 (2d Cir. 2016); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). As for the remaining documents, the SAC is already before the Court as the subject of this motion and the Aflac Letter, while referenced in the SAC (SAC at 20), has no bearing on the Court's analysis. Citations herein to these extraneous documents will correspond to the pagination generated by ECF.

## ANALYSIS

I.   The ADA Claims

The ADA is intended to, *inter alia*, "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to ensure evenhanded treatment between the disabled and the able-bodied," *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). However, "[t]o bring a lawsuit alleging an unlawful employment decision under Title I[6] of the ADA—which prohibits employers from discriminating against disabled employees—a plaintiff must first file a timely charge with the [EEOC]." *Blount v. Cty. of Westchester*, No. 20-CV-1567, 2020 WL 7027497, at *3 (S.D.N.Y. Nov. 30, 2020) (quoting *Parker v. Citizen's Bank, N.A.*, No. 19-CV-1454, 2019 WL 5569680, at *5 n.8 (S.D.N.Y. Oct. 29, 2019) (last alteration in original)); *see also McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43 (2d Cir. 2020) (noting that before considering an ADA claim, a plaintiff must exhaust his or her administrative remedies before the EEOC). It is undisputed that Plaintiff filed a timely charge with the EEOC in June 2018, (SAC at 6; EEOC Charge), and that the EEOC issued a Right to Sue Letter in February 2019 (SAC at 5-6, 8; Right to Sue Ltr.).

a.   ADA: Administrative Exhaustion

As a fundamental point, the BOL argues that any theory of recovery under the ADA aside from a claim for disability discrimination must be dismissed as a result of Plaintiff's failure to exhaust his administrative remedies before the EEOC. (*See* Def. Br. at 12-13). The Court agrees.

---

[6] Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

"[I]t is well-settled that merely checking a box, or failing to check a box[,] does not necessarily control the scope of" the EEOC Charge. *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 442, 448 (E.D.N.Y. 2018) (quoting *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 436 (W.D.N.Y. 1998)). Rather, the analysis asks whether claims *not* submitted to the EEOC are "reasonably related" to those that *were* alleged. *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020). Claims "are reasonably related: '1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Chidume v. Greenburgh-North Castle Union Free Sch. Dist.*, No. 18-CV-1790, 2020 WL 2131771, at *5 (S.D.N.Y. May 4, 2020) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)).

Here, Plaintiff checked only the box marked "Disability." (*See* EEOC Charge). Upon review of the EEOC Charge, the Court finds that any other theories of ADA liability—*i.e.*, failure to accommodate, hostile work environment, retaliation, and so forth—fall outside the EEOC investigation's scope. *See Sternkopf v. White Plains Hosp.*, No. 14-CV-4076, 2015 WL 5692183, at *7-9 (S.D.N.Y. Sept. 25, 2015). As such, any ADA claim aside from disability discrimination is dismissed for failure to exhaust administrative remedies.

b.  ADA: Discrimination

"The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job

with or without accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse employment action was imposed because of [his] disability." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (first alteration in original)). The BOL argues that Plaintiff failed to plead facts supporting the second and fifth elements of this claim for relief. (Def. Br. at 6-12). The Court disagrees.

As to the second element, "[a] person has a 'disability' under the ADA . . . if he has: (a) 'a physical or mental impairment that substantially limits one or more [of his] major life activities,' (b) 'a record of such an impairment,' or (c) is 'regarded as having such an impairment.'" *Veldran v. Dejoy*, --- F. App'x ---, 2020 WL 8084880, at *1 (2d Cir. Jan. 13, 2020) (quoting 42 U.S.C. § 12102(1) (first alteration added)). "Major life activities," in turn, are defined to "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The BOL insists that Plaintiff failed to plead facts establishing that he was disabled within the meaning of the ADA because he did "not identify any major life activity" that his medical conditions limited. (Def. Br. at 6). This narrow argument ignores that the SAC pled facts sufficient to establish plausibly that the BOL regarded him as an individual with a physical or mental impairment that substantially limited one or more major life activities, thereby meeting the definition of "disability" under 42 U.S.C. § 12102(1)(C).

In order to proceed under the ADA on a theory that he suffered discrimination because his employer regarded him as disabled, Plaintiff must "establish[] that he . . . has been subjected to an action prohibited . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

"The perceived impairment, however, cannot be an impairment that is 'transitory'—having an 'actual or expected duration of [six] months or less'—and 'minor.'" *Veldran*, 2020 WL 8084880, at *2 (quoting 42 U.S.C. § 12102(3)(B)). While Plaintiff need not plead facts establishing the *existence* of a disability for this type of claim, he must provide facts sufficient to conclude that the BOL regarded him "as disabled within the meaning of the ADA, *i.e.*, having an impairment that substantially limits a major life activity." *Id.* at *2 (quoting *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)); *see also Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009) (explaining that "whether an individual is 'regarded as' having a disability turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability" (quoting *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) (internal quotation marks omitted))).

Plaintiff pled that he was diagnosed "with a herniated disc and stenosis" in 2015, with "Severe Musculoskeletal Disorder" in 2017, that he experienced excruciating pain in his "lower back, both hips, buttocks, anus, anal canal, and scrotum," that his medical conditions would manifest at the office in the form of sweat, a pale complexion, and irregular breathing, and that he began receiving steroid injections in March 2017. (SAC at 11-12; *see also* Compl. at 11-12). In mid-December 2017, Plaintiff met with Friedman to explain his various medical issues and advise that Plaintiff intended to use all available leave time for medical appointments and anticipated surgery in the coming year. (SAC at 12). While Friedman acknowledged the information, he advised Plaintiff that BOL leadership was slated to change in 2018 and that he would pass the information along to his successor, Power. (*Id.*). Plaintiff does not technically allege that Friedman ever actually provided Power with the information, but, reading the SAC liberally, the Court infers naturally that Friedman gave the information to his successor. Shortly into the new year, Kaplowitz

and Friedman were replaced by Boykin and Power, and the latter two met with Plaintiff and tried to force him to admit that he was not able to perform duties required of the Director of Fiscal Affairs—specifically, attending monthly meetings that would put additional "physical strain" on Plaintiff. (*Id*. at 14). Less than one month later, Plaintiff was terminated. (*Id*.).

Summarized, the SAC suggests plausibly that: (1) Friedman informed Power about Plaintiff's medical issues (*i.e.*, his physical pain, diagnoses, ongoing steroid shots, expected surgery, and anticipated need to exhaust—and perhaps exceed—his leave balances in 2018 to address these issues); (2) upon the change of BOL leadership, Power and Boykin confronted Plaintiff about his failure to attend required meetings physically; and (3) based on this failure, Power and Boykin sought to elicit an admission from Plaintiff that the latter was "unable to perform" those duties, despite being able to do so with an accommodation provided under prior leadership. (SAC at 12, 14; *see also* Compl. at 12, 14). Permitting Plaintiff every inference to which he is entitled on a motion to dismiss, and bearing in mind the special solicitude due a *pro se* litigant, these facts allege plausibly that the BOL regarded Plaintiff as having a disability that substantially limited a major life activity (*i.e.*, working).[7] *See Birnbach v. Americares Found. Inc.*, No. 19-CV-1328, 2020 WL 3510843, at *7-8 (D. Conn. June 29, 2020) (the plaintiff alleged plausibly that his employer at least perceived him as mentally impaired by, *inter alia*, a supervisor's reference to the plaintiff's "learning style and information processing").

---

[7] The Court notes that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (quoting *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 65 (2d Cir. 2003)). Given the information known to the BOL regarding the constellation of issues Plaintiff faced, its history and apparent continuation into late 2018, the accommodation as to travel, and the attempt to secure an admission that Plaintiff was unable to perform his duties, it is plausible at this stage—before fact discovery—that the BOL perceived a limitation on Plaintiff's ability to "perform a class . . . or broad range of jobs." *See* 29 C.F.R. Pt. 1630, App.

As to the fifth element, the BOL argues that Plaintiff failed to link the adverse employment action (*i.e.*, termination) to his perceived disability. (Def. Br. at 10). The Court disagrees. As recounted above, Boykin and Power confronted Plaintiff about his ability to physically attend meetings—a task that would put additional physical strain on Plaintiff, and one for which prior leadership offered an alternate method of completion—on February 2, 2018. (SAC at 14). Less than a month later, Boykin and Power terminated Plaintiff, and Power offered a comment on the necessity of maintaining Plaintiff's health insurance. (*Id.* at 14-15). Here again, mindful of the procedural posture and leeway afforded *pro se* litigants, given the timing and the substance of the parties' interactions, the Court infers a connection and concludes that Plaintiff pled a *sine qua non* link between his perceived disability and his termination. *See Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *8 (E.D.N.Y. June 19, 2020); *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 526 (E.D.N.Y. 2018) (noting that the standard is "flexible" in light of the "differing factual scenarios" and that "[n]o particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination" (internal quotation marks omitted)).

Accordingly, the BOL's motion to dismiss the ADA discrimination claim is denied.

II.   The Rehabilitation Act Claims

Similar to the ADA, "the purpose of the Rehabilitation Act[8] is 'to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion

---

[8] The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The definition of "program or activity" can apply to "local government." 29 U.S.C. §§ 794(b)(1)(A), (B). The BOL does not dispute that it is an entity to which the Rehabilitation Act applies.

and integration into society.'" *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 200 (2d Cir. 2014) (quoting 29 U.S.C. § 701(b)(1)). "Indeed, as [the Second Circuit] ha[s] noted, '[i]t is not enough to open the door for the handicapped . . . ; a ramp must be built so that the door can be reached.'" *Id.* (quoting *Dopico v. Goldschmidt*, 687 F.2d 644, 652 (2d Cir. 1982) (first two alterations added)). However, unlike the ADA, the Second Circuit has "never held that a Rehabilitation Act claim against a non-federal employer is subject to an administrative exhaustion requirement, nor is there any statutory basis for imposing one." *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 81-82 (2d Cir. 2020); *see also Wein v. New York City Dep't of Educ.*, No. 18-CV-11141, 2020 WL 4903997, at *8 n.8 (S.D.N.Y. Aug. 19, 2020) (observing that "[i]n this Circuit, the Rehabilitation Act requires the exhaustion of administrative remedies only in cases brought by federal employees, not by those who work for federally funded employers"). Accordingly, because Plaintiff was not required to exhaust his administrative remedies vis-à-vis the Rehabilitation Act, the Court considers the viability of each theory advanced under that regime. Turning to the SAC, Plaintiff checked the boxes suggesting a variety of adverse employment actions that gave rise to his claims:

> (1) "terminated my employment;"
>
> (2) "did not accommodate my disability;"
>
> (3) "provided me with terms and conditions of employment different from those of similar employees;"
>
> (4) "retaliated against me;" and
>
> (5) "harassed me or created a hostile work environment."

(SAC at 5). These allegations suggest four claims for relief under the Rehabilitation Act: (1) discrimination; (2) retaliation; (3) hostile work environment; and (4) failure to accommodate.[9] Each of these claims for relief have their own nuances, their own objectives, and their own elements. The Court addresses these theories *seriatim*.[10]

   a. Rehabilitation Act: Discrimination

"Disability discrimination claims under the Rehabilitation Act . . . are analyzed under the same standard used for ADA discrimination claims." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, --- F. Supp. 3d ---, 2020 WL 5758752, at *4 (S.D.N.Y. Sept. 28, 2020); *see also Veldran*, 2020 WL 8084880, at *1 (noting that "discrimination claims under the Rehabilitation Act are determined using the standards set forth in the ADA"). Accordingly, because Plaintiff has stated a claim for ADA discrimination based upon the theory that the BOL regarded him as disabled, he has stated a Rehabilitation Act discrimination claim as well.

   b. Rehabilitation Act: Retaliation

A retaliation claim requires a plaintiff to plead that: (i) he "was engaged in a protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists

---

[9] To the extent Plaintiff complains that his employment conditions were different from similarly situated employees, a claim for disparate treatment under the Rehabilitation Act coalesces with a claim for discrimination. *See Lee v. Saul*, No. 19-CV-6553, 2020 WL 7029264, at *4 (S.D.N.Y. Aug. 31, 2020) (noting that a disparate treatment claim requires a plaintiff to plead that the employer is subject to the Rehabilitation Act, that he was disabled under the statute, that he could perform the essential functions of the job with or without reasonable accommodation, and that he suffered an adverse employment action because of his disability), *adopted as modified by* 2020 WL 5836513 (S.D.N.Y. Sept. 30, 2020); *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) (same).

[10] The BOL did not differentiate between the ADA and the Rehabilitation Act in its briefing. However, given the similarities between the analyses, the Court considers the substantive arguments in support of dismissing the ADA claims as arguments against the Rehabilitation Act claims.

between the protected activity and the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)). Here, the BOL argues that Plaintiff pled neither a protected activity nor causation. (Def. Br. at 17). The Court disagrees.

Seeking a reasonable accommodation "constitutes a protected activity," *Weixel*, 287 F.3d at 149 (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)), and a person requesting a reasonable accommodation "receives protection even if [he] was not entitled to the reasonable accommodation, so long as [he] made [his] request in good faith." *Adams v. Delta Airlines, Inc.*, No. 16-CV-1986, 2017 WL 9674513, at *7 n.20 (E.D.N.Y. Dec. 18, 2017) (quoting *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *19 (E.D.N.Y. Mar. 26, 2013)), *adopted as modified by* 2018 WL 1532434 (E.D.N.Y. Mar. 29, 2018); *Atencio v. United States Postal Serv.*, 198 F. Supp. 3d 340, 362 (S.D.N.Y. 2016); *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Conley v. United Parcel Serv.*, 88 F. Supp. 2d 16, 20 (E.D.N.Y. 2000)). Indeed, "a claim of retaliation for protected conduct is a separate claim from a discrimination claim and does not depend on the success of the employee's disability claim." *Kelly*, 200 F. Supp. 3d at 403 (internal quotation marks omitted).

As for determining whether Plaintiff sought a reasonable accommodation, "[w]hat matters under the . . . [Rehabilitation Act] are not formalisms about the manner of the request, but whether the [requestor or his representative] provides the [requestee] with enough information that, under the circumstances, the [requestee] can be fairly said to know of both the disability and desire for an accommodation." *Dotson v. City of Syracuse*, No. 18-CV-750, 2019 WL 2009076, at *13 (N.D.N.Y. May 7, 2019) (quoting *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 539-40 (S.D.N.Y. 2014)); *see also Khalil v. Pratt Inst.*, No. 16-CV-6731, 2019 WL 1052195, at

*7 (E.D.N.Y. Feb. 13, 2019) (same), *adopted by* 2019 WL 1046248 (E.D.N.Y. Mar. 4, 2019). Here, Plaintiff pled facts suggesting that he sought an accommodation on February 2, 2018.[11]

Drawing all inferences in Plaintiff's favor, during the Kaplowitz/Friedman tenure, Plaintiff had not been required to physically attend weekly meetings. (SAC at 14). The accommodation Plaintiff had been permitted to utilize—that is, "reviewing minutes" and speaking with "senior staff" after those meetings—had allowed him to perform the tasks of the Director of Fiscal Affairs. (*Id.*). Nevertheless, aware of the information Plaintiff provided to Friedman as to Plaintiff's numerous health issues, Boykin and Power confronted Plaintiff about his failure to attend those meetings. (*Id.*). The Court infers that, at the very least, as a result of that interaction, Boykin and Power regarded Plaintiff as disabled and knew of his desire for the continued accommodation of not physically attending the monthly meetings. Based on these allegations, the Court concludes that Plaintiff pled plausibly that he requested a reasonable accommodation (*i.e.*, modified attendance at required weekly meetings) and, therefore, engaged in a protected activity.

As for causation, the fact that Plaintiff was terminated less than a month after Boykin and Power were made aware of Plaintiff's request provides a temporal proximity to plead a causal connection between Plaintiff's request and the adverse employment action. *See Natofsky*, 921 F.3d at 353 (noting that causation may be shown by pleading that the "protected activity was followed

---

[11] With respect to Plaintiff's claim that he was "denied an ergonomic chair and desk" (SAC at 14), he does not specify how that request was made, when it was made, to whom it was made, or any facts regarding its denial; such a conclusory allegation is insufficient to constitute a request for a reasonable accommodation. *See Lee*, 2020 WL 7029264, at *3; *Garcia v. Kings Cty. Hosp. Ctr.*, No. 16-CV-3151, 2018 WL 389212, at *6 (S.D.N.Y. Jan. 11, 2018); *Jacobs v. New York City Dep't of Educ.*, No. 11-CV-5058, 2013 WL 12425672, at *4 n.7 (E.D.N.Y. Feb. 1, 2013). As for leave, "[t]he Second Circuit has never resolved whether . . . leave can constitute a reasonable accommodation . . . ." *Robles*, 2020 WL 3403191, at *9 (internal quotation marks omitted). Assuming that leave would qualify, the request must be "finite" and "reasonably likely to enable the employee to return to work." *Id.* (internal quotation marks omitted). Plaintiff's request reflected neither of these qualities. (SAC at 12).

closely by" the adverse action); *Dodd v. City Univ. of New York*, --- F. Supp. 3d ---, 2020 WL 5750715, at *18 (S.D.N.Y. Sept. 25, 2020) (observing that "to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between the protected activity and an adverse action").

The Court concludes that Plaintiff pled plausibly a Rehabilitation Act retaliation claim.

### c.   Rehabilitation Act: Hostile Work Environment

To state a claim for hostile work environment under the Rehabilitation Act, Plaintiff must allege: "(1) a workplace that is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered and (2) a specific basis for imputing the challenged conduct to the employer." *Miller v. McHugh*, No. 14-CV-5026, 2016 WL 698147, at *3 (S.D.N.Y. Feb. 19, 2016) (quoting *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014)); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (outlining the same elements for a hostile work environment claim under the ADA). The offending conduct must be linked to the "protected class." *Miller*, 2016 WL 698147, at *3  (internal quotation marks omitted); *see also Mitchell v. New York City Transit Auth.*, 856 F. Supp. 2d 478, 482 (E.D.N.Y. 2012) (noting that, on an ADA hostile work environment claim, a showing that "Plaintiff is disabled under the ADA (or regarded as disabled) is key"). While a single severe incident may suffice, "[a]s a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, at *13 (S.D.N.Y. May 31, 2020) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). The BOL argues that this claim must be dismissed because Plaintiff failed to plead facts suggesting a pervasively hostile environment. (Def. Br. at 18-19). The Court agrees.

Generally, Plaintiff pled that he was celebrated during his tenure on the BOL. (*See generally* SAC at 9-22). Indeed, Plaintiff pled that he was so successful that, in December 2017 and January 2018, there was "[e]xecutive[-]level chatter" about Plaintiff replacing the County Budget Director, Lawrence Soule. (*Id.* at 13). The only instances of hostility Plaintiff identified were: (1) the February 2, 2018 interaction with Boykin and Power; (2) a specific moment on that day when Plaintiff claims that Power tried to punch Plaintiff; (3) Boykin's generalized "[h]ostility" toward Plaintiff after Plaintiff was out with the flu; and (4) the March 1, 2018 termination. (*Id.* at 14-16). Looking to the totality of the circumstances, these incidents do not rise to the level of establishing a work environment so permeated with discrimination as to alter the terms and conditions of Plaintiff's employment. *See Lee*, 2020 WL 7029264, at *5.

Accordingly, because Plaintiff has not pled facts suggesting a work environment so wrought with hostility as to alter his employment conditions, the Rehabilitation Act hostile work environment claim is dismissed.

### d.  Rehabilitation Act: Failure to Accommodate

Plaintiff's final theory of recovery under the Rehabilitation Act is failure to provide a reasonable accommodation. (SAC at 4-5). This species of recovery is different from those discussed already in at least one fundamental way: unlike claims for discrimination, retaliation, or hostile work environment—claims of relief focused on an employer's intent or perception, which may proceed without a plaintiff showing that he is, in fact, disabled under the statute—a failure to accommodate claim can proceed only on a showing that Plaintiff is so disabled. *Shomo v. Dep't of Corrs. & Cmty. Supervision*, No. 15-CV-1029, 2019 WL 7971871, at *12 (N.D.N.Y. Oct. 7, 2019) (observing that even if Plaintiff was "regarded as" disabled, he was not actually entitled to a reasonable accommodation), *adopted by* 2020 WL 486868 (N.D.N.Y. Jan. 30, 2020); (*see also*

Right to Sue Ltr. at 4 (noting that, under the ADA, "[a] person is not able to bring a failure to accommodate claim *if* the individual is covered only under the 'regarded as' definition of 'disability'" (emphasis in original)).

To state a failure to accommodate claim under the Rehabilitation Act, Plaintiff must plead that: "(1) [he] is a person with a disability under the meaning of [the Rehabilitation Act]; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky*, 921 F.3d at 352 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). Additionally, Plaintiff "must show the connections between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action." *Id.* (internal quotation marks omitted). Here, the BOL argues that Plaintiff did not plead facts establishing that he suffered from a disability or that he requested an accommodation that was denied.[12] (Def. Br. at 13-16). The Court agrees that Plaintiff failed to plead that he was, in fact, disabled. As such, this claim for relief must be dismissed.

For an employment discrimination claim under the Rehabilitation Act, the statute "takes its definition of 'disability' from the" ADA. *Freeman v. Kirisits*, 818 F. App'x 34, 40 (2d Cir. 2020) (citing 29 U.S.C. § 705(9)(B)). As explained previously, that means Plaintiff must show that he has "a physical or mental impairment that substantially limits one or more [of his] major life activities . . . ." *Id.* (quoting 42 U.S.C § 12102(1)(A)); *see also Veldran*, 2020 WL 8084880, at *1. Here, while Plaintiff pled facts suggesting plausibly that his employer perceived him as disabled, he did not plead facts suggesting that he was, in actuality, disabled during his tenure at the BOL. Admittedly, Plaintiff pled that he was "diagnosed with a herniated disc and stenosis . . . [and]

---

[12] The Court addressed the issue of whether Plaintiff requested a reasonable accommodation *supra*.

Severe Musculoskeletal Disorder," that he experienced severe pain and irregular breathing, that he received steroid injections, and that he anticipated having surgery for these issues (SAC at 11-12; Compl. at 11), but he does not identify how, if at all, these problems substantially limited a "major life activity." Rather, Plaintiff's allegations recount the story of how he was able to *overcome* the impairments and maintain his status as a celebrated and valued employee. (*See generally* SAC at 9-22); *see Langella*, 2020 WL 2836760, at *9-10 (concluding that pleading the existence of two heart issues, without more, did not explain how the diagnoses "impact[ed] a major life activity, let alone that either significantly restricts it").

As Plaintiff has not pled facts establishing that he was disabled within the meaning of the statute, the failure to accommodate claim is dismissed.

III.   <u>The FMLA Claims</u>

Generally, the FMLA is meant "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. §§ 2601(b)(1), (2). To this end, "the FMLA makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 800 (S.D.N.Y. 2018) (quoting 29 U.S.C. § 2615(a)). Under Second Circuit precedent, there are two types of private claims for relief under the FMLA: "'interference' claims and 'retaliation' claims." *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)). The SAC does not

identify specifically one theory of FMLA recovery, so the Court considers whether Plaintiff pled plausibly either species of relief.

An FMLA interference claim requires that Plaintiff plead: "(1) that [he] is an eligible employee under the FMLA; (2) that defendant is an employer as defined by the FMLA; (3) that [he] was entitled to leave under the FMLA; (4) that [he] gave notice to the defendant of [his] intention to take leave; and (5) that [he] was denied benefits to which [he] was entitled under the FMLA." *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017) (quoting *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004)); *see also Smith*, 769 F. Supp. 2d at 465. As for an FMLA retaliation claim, Plaintiff "must demonstrate [that]: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18-CV-6731, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020) (citing *Potenza*, 365 F.3d at 168). In either scenario, the "threshold issue for both . . . claims is whether an employee is eligible under the statute to claim its protections." *Arroyo-Home v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020). The BOL argues that Plaintiff failed to plead that he was "an eligible employee under the FMLA." (Def. Br. at 20-21). The Court agrees.

"To be eligible for FMLA leave, an employee must have been employed for at least twelve months by the employer from whom [he] is requesting leave, and [he] must have worked at least 1,250 hours with that employer in the twelve months prior to the beginning of [his] medical leave." *Arroyo-Home*, 831 F. App'x at 539. Plaintiff pled that he was employed by the BOL from September 29, 2014 until March 1, 2018, so he alleged adequately that he was "employed for at least twelve months by the" BOL. (SAC at 9, 14). Plaintiff has not, however, pled that he worked

"at least" 1,250 with the BOL in the twelve months before his anticipated medical leave.[13] A review of the SAC reveals no statements as to the number of hours worked and, while the SAC includes a copy of a September 11, 2014 letter from Kaplowitz to Plaintiff describing the position as "full time" (SAC at 23), that is not enough to state a claim. It is well established that "[a] simple allegation that the employee was 'employed full-time' by the employer is not enough to satisfy the 1,250 hours prong of the test.'" *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 512 (S.D.N.Y. 2016) (quoting *Simmons v. New York City Transit Auth.*, No. 96-CV-3414, 2001 WL 984905, at *2 (E.D.N.Y. July 6, 2001) (alteration in original)); *see also Robles*, 2020 WL 3403191, at *14; *McCarrick v. Corning, Inc.*, No. 18-CV-6435, 2019 WL 5618422, at *3 (W.D.N.Y. Oct. 31, 2019); *Smith*, 769 F. Supp. 2d at 465.

As Plaintiff has not pled facts establishing plausibly that he was, in fact, an "eligible employee" under the FMLA, the FMLA claims for relief are dismissed. However, even if that were not the case, the claims would nevertheless be dismissed for separate substantive failings highlighted by the BOL. (*See* Def. Br. at 21-22).

a.   FMLA: Interference

With regard to this class of the FMLA claims, the BOL argues that Plaintiff "has not alleged that he was denied any benefits to which he was entitled under the FMLA." (Def. Br. at 21). The Court agrees. Plaintiff pled that he informed Friedman that he anticipated exhausting his leave balances in the second half of 2018, but did not allege that this request was ever denied; in fact, the leave he requested and took between meeting with Friedman and his termination was *granted*. (SAC at 16; Opp. Br. at 19). This belies a claim that the BOL "interfered" with Plaintiff's FMLA

---

[13] Nor is it clear that Plaintiff could plead such facts, as the anticipated leave was approximately eight months into the future. (SAC at 12).

rights and, as such, provides an alternate basis to dismiss this claim. *See Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 418 (E.D.N.Y. 2010) (admission that plaintiff was granted leave "foreclose[d]" an FMLA interference claim).

  b. <u>FMLA: Retaliation</u>

   As for this theory of FMLA liability, the BOL argues that Plaintiff failed to plead that his request for leave caused his termination. (Def. Br. at 21-22). The Court agrees. Plaintiff pled no facts linking his discussion with Friedman in December 2017 to his termination in March 2018 and, as the incidents are more than two months apart, he was required to do so. Because the events were more than two months apart, he could not rely solely on the events' temporal proximity to plead causation. *Compare Dodd*, 2020 WL 5750715, at *18 (noting that a plaintiff can plead a Rehabilitation Act retaliation claim relying on timing, alone, so long as "no more than two months . . . have passed"), *with Fukelman v. Delta Air Lines, Inc.*, No. 18-CV-2, 2020 WL 4587496, at *19 (E.D.N.Y. Apr. 13, 2020) (dismissing FMLA retaliation claim and noting that "the passage of two or three months between the protected conduct and adverse employment action, unsupported by any other allegation showing plausible retaliation, are insufficient to raise an inference of retaliation" (internal quotation marks omitted)), *adopted by* 2020 WL 2781662 (E.D.N.Y. May 29, 2020); *see also Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*, 107 F. Supp. 3d 323, 329 (S.D.N.Y. 2015) (noting that "the passage of more than two months has been viewed as beyond . . . any retaliatory nexus" (internal quotation marks omitted)), *aff'd sub nom. Alexander v. Bd. of Educ. of City of New York*, 648 F. App'x 118 (2d Cir. 2016). Consequently, Plaintiff's failure to plead any facts linking his termination to this FMLA request provides a separate basis to dismiss this claim for relief.

IV.     The NYSHRL and "All Applicable New York State Law" Claims

As to the NYSHRL claims, the BOL argues that they (and any other unspecified claims under New York State law) must be dismissed because Plaintiff failed to serve a notice of claim. (Def. Br. at 22-23). The Court agrees; indeed, state law claims pressed in federal court are still "subject to state procedural rules." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted).

New York State County Law provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law.

N.Y. Cty. Law § 52(1). New York General Municipal Law § 50-e, in turn, requires that a notice of claim "be served in accordance with the provisions of th[at] section within ninety days after the claim arises . . . ." N.Y. Gen. Mun. Law § 50-e(1)(a). It is well-established in the jurisprudence of this Circuit that the state law claims at issue here would be subject to the notice of claim requirement. *See, e.g.*, *Styles v. Westchester Cty.*, No. 18-CV-12021, 2020 WL 1166404, at *6 (S.D.N.Y. Mar. 10, 2020); *Rodriguez v. Nassau Cty.*, No. 16-CV-2648, 2019 WL 4674766, at *16 (E.D.N.Y. Sept. 25, 2019); *Russell*, 2017 WL 4326545, at *6; *Williams v. Cty. of Nassau*, No. 15-CV-7098, 2017 WL 1216566, at *6 (E.D.N.Y. Mar. 30, 2017); *Costabile v. Cty. of Westchester, New York*, 485 F. Supp. 2d 424, 430-431 (S.D.N.Y. 2007).

In order to survive this motion, Plaintiff had to plead "affirmatively that [he] . . . complied with notice of claim requirements." *Dinkins v. New York*, No. 19-CV-8447, 2020 WL 5659554, at

*10 (S.D.N.Y. Sept. 23, 2020) (citing *Villa v. Westchester Cty.*, No. 19-CV-428, 2020 WL 4505968, at *8 (S.D.N.Y. Aug. 5, 2020)). He has not done so. Accordingly, the NYSHRL claims, and any unspecified claims for relief available under New York State law, are dismissed for failure to serve a timely notice of claim.

V.   The NYCHRL Claims

The final specific group of claims Plaintiff seeks to pursue are those under the NYCHRL. (SAC at 4). The BOL argues that this statutory regime is inapplicable here. (Def. Br. at 23). The Court agrees. In short, the *New York City* Human Rights Law applies only "to acts that occur within the boundaries of New York City." *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 500 F. App'x 39 (2d Cir. 2012); *see also Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2017 WL 1194699, at *9 (S.D.N.Y. Mar. 30, 2017) (explaining that an NYCHRL claim requires that "[a] [p]laintiff . . . allege that the [d]efendant discriminated against her within the boundaries of New York City" (quoting *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (ellipses added)); *Kearse v. ATC Healthcare Servs.*, No. 12-CV-233, 2013 WL 1496951, at *2 (S.D.N.Y. Apr. 8, 2013) (concluding that, even if plaintiff were a New York City resident, that fact "would be 'irrelevant to the impact analysis, which confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city" (quoting *Cox & Co.*, 841 F. Supp. 2d at 624)). Accordingly, the NYCHRL claims are dismissed.


**[Remainder of Page Intentionally Left Blank]**

26

## **CONCLUSION**

Based upon the foregoing, the BOL's motion to dismiss is GRANTED in part. Plaintiff's ADA discrimination, Rehabilitation Act discrimination, and Rehabilitation Act retaliation claims for relief shall proceed to discovery. All remaining claims for relief under the ADA, Rehabilitation Act, FMLA, NYSHRL, NYCHRL, and "applicable" New York State law are DISMISSED.

The BOL is directed to file an Answer to the SAC within fourteen (14) days of the date of this Memorandum Opinion and Order. The Court will issue an Initial Pretrial Conference Order and set a conference date in short order.

The Clerk of the Court is directed to terminate motion sequence pending at Doc. 42.

**SO ORDERED:**

Dated:   New York, New York
        January 22, 2021

_____
PHILIP M. HALPERN
United States District Judge