UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANTE EDOARDO DALY,

                              Plaintiff,

              -against-

WESTCHESTER COUNTY BOARD OF
LEGISLATORS,

                              Defendant.

**OPINION & ORDER**

19-CV-04642 (PMH)

PHILIP M. HALPERN, United States District Judge:

Dante Edoardo Daly ("Plaintiff") presses claims against his former employer, the Westchester County Board of Legislators ("BOL" or "Defendant"), associated with the termination of his employment in March 2018.[1] Plaintiff filed his initial Complaint on May 20, 2019. (Doc. 2, "Compl."). On February 11, 2020, Plaintiff filed his First Amended Complaint ("FAC") with leave of the Court. (Doc. 33, "FAC"). Days later and with the Court's permission, on February 14, 2020, Plaintiff filed his Second Amended Complaint ("SAC"), the operative pleading. (Doc. 35, "SAC").

Plaintiff alleges that the BOL discriminated against him in violation of: (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.*; (3) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*; (4) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*; (5) the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8-101, *et seq.*; and (6) "All Applicable New York State Laws." (*Id.* at 4). The alleged disabilities (or perceived disabilities) underlying Plaintiff's

---

[1] Plaintiff commenced this action *pro se*, but later retained counsel who filed a Notice of Appearance in this case on June 14, 2021. (Doc. 129).

ADA and Rehabilitation Act claims are "Severe Musculoskeletal Disorder, lumbar disc disease, coronary artery disease, [and] osteoarthritis of the bilateral hips." (*Id.*).

The Court, in a January 22, 2021 Memorandum Opinion and Order, partially granted Defendant's motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), dismissing all claims except for "Plaintiff's ADA discrimination, Rehabilitation Act discrimination, and Rehabilitation Act retaliation claims." (Doc. 56).[2] Defendant filed an Answer to the SAC on February 19, 2021, and the case proceeded to discovery. (Doc. 67). Discovery on the three remaining claims closed on April 15, 2022. (Doc. 160).

Defendant filed its motion for summary judgment, pursuant to the briefing schedule set forth by the Court, on December 21, 2022. (Doc. 185, "56.1 Stmt."; Doc. 197; Doc. 198, "Micciche Decl."; Doc. 199, "Def. Br."). Plaintiff filed his opposition (Doc. 200, "Pl. Br."; Doc. 201, "Santos Decl. I"; Doc. 202, "Pl. Aff."; Doc. 203, "Santos Decl. II"), and the motion was fully briefed with the filing of Defendant's reply (Doc. 204, "Reply").

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement and Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.[3]

---

[2] This decision is available on commercial databases. *See Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2021 WL 229672 (S.D.N.Y. Jan. 22, 2021).

[3] Plaintiff's responses to the material facts contained in the 56.1 Statement include several non-responsive denials, discussed further *infra*. Local Rule 56.1(c) provides that facts in a 56.1 statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c).

The BOL is the legislative branch of Westchester County. (56.1 Stmt. ¶ 2). During all relevant periods, the BOL was "one hundred percent funded by County tax revenues" and "did not receive any federal funding." (*Id.* ¶¶ 2-3).[4] Former BOL Chairman Michael Kaplowitz ("Kaplowitz") hired Daly in September 2014 to serve as the BOL's Director of Fiscal Affairs. (*Id.* ¶ 22). Plaintiff's employment with the BOL was at-will. (*Id.* ¶ 24). Plaintiff was responsible for various budgetary and financial analyses, including capital budget and contract review. (*Id.* ¶ 27). Plaintiff's position also required that he attend various meetings, some of which occurred at locations other than the County offices located at 148 Martine Avenue. (*Id.* ¶ 28). For most of Plaintiff's tenure with the BOL, he reported directly to Kaplowitz and Kaplowitz's Chief of Staff,

---

Furthermore, "[e]ach statement . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." *Id.* at 56.1(d). The Court therefore deems, in accordance with Local Rule 56.1, Defendant's statements of fact admitted unless specifically controverted by Plaintiff and supported by admissible evidence.

[4] Plaintiff cites two documents in support of this fact. First, an affidavit from Lawrence C. Soule III—Westchester County's Budget Director—who states that he has reviewed the BOL's budgets and that "from September 2014 through April 2018, the BOL's budget was one hundred percent funded by County tax revenues. In other words, during that time, the BOL received no federal funding, either directly or indirectly." (Micciche Decl., Ex. G ¶ 3). Second, Defendant cites to its Requests for Admission which ask Plaintiff to admit that "[t]he BOL does not receive federal funding." (*Id.*, Ex. S at 7). Defendant argues that this request to admit should be deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3) because "Plaintiff failed to respond to the BOL's Request for Admissions." (Def. Br. at 7). Plaintiff did not respond to Defendant's requests to admit, nor does he move the Court to withdraw or amend these admissions pursuant to Fed. R. Civ. P. 36(b). "Therefore, the facts set forth in [Defendant's] requests for admission are conclusively established for purposes of this motion." *Reiffer v. NYC Luxury Limousine Ltd.*, No. 22-CV-2374, 2023 WL 4029400, at *6 (S.D.N.Y. June 15, 2023); *see also Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 250 (S.D.N.Y. 2019) (deeming facts conclusively established where responding party neither timely responded to requests for admission nor made a motion for the admission to be withdrawn or amended); *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-02406, 2021 WL 3540671, at *4 (S.D.N.Y. Aug. 10, 2021) (same). Plaintiff denies that the BOL did not receive federal funding and states that "[a]t all relevant times, from 2014 to 2018, the County significant federal funds as part of its operating budget." (56.1 Stmt. ¶ 3). Plaintiff cites to, in support of this denial, excerpted copies of the County's operating budget reports for the years 2014 through 2018. (Santos Decl. I, Exs. 1-5). These operating budget reports state that Westchester County received federal and state aid which went to "social services" and "other departments and accounts" but notably the budget reports do not state that the BOL received any federal funds from 2014 through 2018. (*Id.*). Plaintiff's denial—and the evidence Plaintiff cites to—does not specifically controvert whether the BOL received federal funding. As such, this fact is deemed admitted.

Gary Friedman ("Friedman"). (*Id.* ¶ 31). Plaintiff also received assignments from BOL staff member Tara Bernard ("Bernard"). (*Id.*).

Throughout Plaintiff's tenure, Kaplowitz received frequent complaints about Plaintiff's job performance, including concerns over "a perceived lack of substantive grasp of the job, and the value Plaintiff added to the BOL." (*Id.* ¶ 32).[5] Kaplowitz, Friedman, Bernard, and Malika Vanderberg ("Vanderberg")—the BOL's Clerk and Chief Administrative Officer—discussed terminating Plaintiff's employment on several occasions. (*Id.* ¶ 33). Kaplowitz did not terminate Plaintiff, notwithstanding the complaints he received about his job performance, due to the fact that Plaintiff had a young family and a child. (*Id.* ¶ 35). Rather than terminate Plaintiff, some of his budgetary analysis responsibilities were given to Anna Champeny ("Champeny"), who was hired in September 2014 as Plaintiff's Deputy Director of Financial Affairs. (*Id.* ¶¶ 36, 38). Plaintiff's remaining tasks included "less critical research on fiscal matters and clerical tasks including attendance at both on-site and off-site meetings." (*Id.* ¶ 37).

By the third week of December 2017, it was common knowledge at the BOL that Kaplowitz would no longer be serving as the Chairman. (*Id.* ¶ 44). In or about the third week of December 2017, Plaintiff told Friedman, Bernard, and other staff members that he would need to take substantial leave time in August or September 2018 due to a scheduled spinal fusion surgery. (*Id.* ¶ 45). The BOL's procedure for requesting time off required an employee to fill out a request and submit the request to his or her supervisor, and if the request was approved the approval would be placed in a folder in Vanderberg's office. (*Id.* ¶ 46). Plaintiff complied with this procedure prior

---

[5] Plaintiff denies this fact by stating, "at no time did anyone give Plaintiff any written nor verbal warning nor performance evaluation nor any complaint indicating that there was a problem with Plaintiff's job performance." (56.1 Stmt. ¶ 32). This denial does not specifically controvert whether Kaplowitz received complaints about Plaintiff's job performance, nor does Plaintiff cite to any evidence that contradicts Defendant's statement which is supported by record evidence. As such, this fact is deemed admitted.

to this occasion and would regularly email his supervisors with the specific reason for his requested leave. (*Id.*). Plaintiff did not email Vanderberg about this anticipated surgery or make any request for time off to Vanderberg. (*Id.* ¶ 47). Benjamin Boykin ("Boykin") became the Chairman of the BOL on January 1, 2018 and Dennis Power ("Power") became the Chief of Staff on January 18, 2018. (*Id.* ¶¶ 52-53). Plaintiff alleges that he asked Friedman to communicate his leave request to Power, but Plaintiff does not know whether Friedman ever did so. (*Id.* ¶¶ 51, 54). Neither Boykin nor Power ever discussed Plaintiff with Friedman. (*Id.* ¶ 55).

Boykin and Power met with Plaintiff twice in the first week of February 2018 to discuss Plaintiff's job responsibilities. (*Id.* ¶ 57). At no time during these meetings did Plaintiff request that he be allowed to attend meetings remotely because of a disability or that he be allowed to take time off in the future for a surgery. (*Id.* ¶¶ 60-61). Plaintiff did not tell Boykin or Power that he had a back problem or that he required surgery in or about August or September 2018. (*Id.* ¶¶ 63-64). [6] Boykin and Power discussed, during the February 2018 meetings, Plaintiff's job performance. (*Id.* ¶ 65). Specifically, Boykin and Power discussed with Plaintiff an incident where Plaintiff placed a report containing personal information of all County employees—including the last four digits of each employee's social security number—on the BOL shared drive that all BOL employees could access. (*Id.*). Boykin terminated Plaintiff's employment with the BOL, effective March 1, 2018. (*Id.* ¶ 66).

---

[6] Plaintiff denies these facts and states that he "told Boykin during the 3rd week of February 2018 that he had a serious back problem." (56.1 Stmt. ¶¶ 63-64). Plaintiff cites, in support of his denial, to paragraphs 41-43 of his affidavit and pages 127-128 of his deposition transcript. Plaintiff states in his affidavit that he "made a reasonable inference" that Friedman made Boykin and Power aware of his "workplace accommodation request" but does not state that Plaintiff actually told Boykin or Power about either having a disability or needing surgery. (Pl. Aff. ¶ 43). Plaintiff's deposition transcript, likewise, does not contain any testimony that Plaintiff told Boykin or Power about having a disability or needing surgery. (*See* Micciche Decl., Ex. D ("Pl. Dep. Tr.")). Plaintiff has failed to controvert these facts and as such, they are deemed admitted.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[7] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable

---

[7] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought. "Courts have acknowledged the dangers of summary judgment in discrimination cases: Because direct evidence of discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 389 (S.D.N.Y. 2022).

## ANALYSIS

Defendant presses four arguments in support of its motion for summary judgment: "(a) Plaintiff's surviving 'regarded as' claim under the [ADA], must fail because Plaintiff failed to exhaust his administrative remedies; (b) Plaintiff's surviving 'regarded as' and retaliation claims under the [Rehabilitation Act] must fail because the BOL did not receive federal funding during the relevant dates and times alleged in the SAC; (c) Plaintiff failed to establish that he was 'regarded as' disabled under the ADA and/or [Rehabilitation Act]; and (d) Plaintiff failed to establish a retaliation claim under the [Rehabilitation Act]." (Def. Br. at 1). The Court will address Defendant's arguments with respect to each of Plaintiff's extant claims for relief.

### I.    Plaintiff's ADA Claim

#### A.  The ADA's Exhaustion of Administrative Remedies Requirement

Defendant argues that Plaintiff failed to exhaust his administrative remedies under the ADA because "[t]he EEOC Complaint . . . is silent on any allegation that the BOL regarded Plaintiff as having a disability, alleging only . . . that Plaintiff was terminated due to an alleged actual disability." (Def. Br. at 5). Plaintiff argues that the law of the case doctrine forecloses this argument because the Court considered and ruled on the exhaustion issue in its January 22, 2021 Memorandum Opinion and Order. (Doc. 56). "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages." *DeJohnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). The Court held, in the January 22, 2021 Memorandum Opinion and Order,

> "[u]pon review of the EEOC Charge, the Court finds that any other theories of ADA liability—*i.e.*, failure to accommodate, hostile work environment, retaliation, and so forth—fall outside the EEOC investigation's scope. As such, any ADA claim aside from disability discrimination is dismissed for failure to exhaust administrative remedies."

(Doc. 56 at 8-9). The parties' motion to dismiss briefing did not address—and the January 22, 2021 Memorandum Opinion and Order accordingly did not consider—whether Plaintiff's EEOC Charge contained any facts upon which a "regarded as" disability discrimination claim may be reasonably construed. (*Id.*). Rather, in the motion to dismiss, Defendant only argued that Plaintiff's EEOC Charge did not provide grounds to press non-discrimination ADA claims, such as claims for failure to accommodate, hostile work environment, and retaliation. (*Id.*). The Court held that Plaintiff failed to exhaust administrative remedies aside from disability discrimination under the ADA, but did not specifically consider whether the EEOC Charge could serve as the basis for a "regarded as" disability discrimination claim. Defendant now raises that narrower argument: whether Plaintiff failed to exhaust his remedies for a "regarded as" disability claim. The Court's consideration of Defendant's argument is not barred by the law of the case doctrine, as the doctrine "applies only to the specific issues the court decided." *Azzara v. United States*, No. 19-CV-08751, 2020 WL 13553829, at *3, n.3 (S.D.N.Y. Feb. 14, 2020).

Plaintiff's EEOC Complaint is silent on whether the BOL regarded Plaintiff as having a disability. (Doc. 43-2, "EEOC Charge"). In fact, the EEOC Charge is devoid of any reference to Defendant's perception of Plaintiff. (*Id.*). Instead, Plaintiff asserts in the EEOC Charge that he believes that he "was terminated because of [his] disability", that he "repeatedly notified [his] employer of [his] disability, and that "[t]here was no possible reason for [his] termination other than [his] disability status." (*Id.* at 3). "A claim not expressly raised in an EEOC Charge nevertheless may be brought in federal court if it is reasonably related to the claim filed with the agency." *Cadely v. New York City Dep't of Transp.*, No. 04-CV-08196, 2008 WL 465199, at *9 (S.D.N.Y. Feb. 13, 2008). The court in *Cadely* held that the EEOC charge did not serve as a basis to raise a "regarded as" claim because plaintiff asserted "that he was actually disabled without

making any mention of having been incorrectly perceived as disabled." *Id.* The court reasoned that the plaintiff's failure to cite any facts to suggest he was pressing a "regarded as" claim "is particularly relevant because a 'regarded as' claim turns on the employer's perception of the employee, not whether the employee actually has a disability." *Id.* at *10. The court in *Yin v. N. Shore LIJ Health Sys.* likewise held that an EEOC charge was not "reasonably related" to the plaintiff's "regarded as" disability discrimination where the EEOC charge did not contain "any facts that defendant regarded [plaintiff] as having a disability or any facts suggesting that she was making such a claim." 20 F. Supp. 3d 359, 368 (E.D.N.Y. 2014).

Like in *Cadely* and *Yin*, here too, Plaintiff's EEOC Charge contains no facts that Defendant regarded Plaintiff as having a disability. Accordingly, Plaintiff's "regarded as" disability discrimination claim under the ADA is precluded for failure to exhaust administrative remedies.

## B.  ADA "Regarded As" Disability Discrimination Claim

The *McDonnell Douglas* burden-shifting framework applies to discrimination claims brought under both the ADA and the Rehabilitation Act. *See Davis v. Power Auth.*, No. 22-488, 2023 WL 3064705, at *1 (2d Cir. Apr. 25, 2023). "A plaintiff must establish a *prima facie* case of discrimination, after which the burden of proof shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employer's conduct; if the defendant does so, the plaintiff must then demonstrate that the employer's assigned reason was a pretext or discriminatory in its application." *Id.* Defendant argues that (a) Plaintiff has "fail[ed] to establish *prima facie* that he was 'regarded as' disabled" and (b) that "[t]here was a legitimate, non-discriminatory reason for Plaintiff's termination." (Def. Br.at 10-13). The Court will address each of these arguments.

1. *Prima Facie* Case

To survive summary judgment, Plaintiff must establish that the BOL "regarded him as having a mental or physical impairment." *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012). "To determine whether a plaintiff's employer regards [him] as disabled, we look primarily to the views of the person who made the decision to take adverse employment actions, rather than those of other supervisors or employees." *Bruzzese v. Sessions*, 725 F. App'x 68, 71 (2d Cir. 2018). It is undisputed that Boykin made the decision to terminate Plaintiff's employment with the BOL. (56.1 Stmt. ¶ 66). Although Plaintiff told Friedman about his back pain and plans to request leave for his surgery, Plaintiff admits that "[n]either Boykin nor Power ever discussed Plaintiff with Friedman." (*Id.* ¶ 55). Plaintiff further admits that he never told Boykin or Power about his plans to request leave during the February 2018 meetings. (*Id.* ¶ 61). Plaintiff's affidavit confirms that he never actually told either Boykin or Power about his back pain or plans to request leave for surgery, but instead "made a reasonable inference that the outgoing Chief of Staff Friedman and/or other BOL employee or employees had made Chairman Boykin and Mr. Power aware" of those facts. (Pl. Aff. ¶ 43). Plaintiff has failed to "offer tangible proof in admissible form beyond the thoughts ruminating within the four corners of his own mind" that Boykin—the person who made the decision to terminate his employment—regarded Plaintiff as having an impairment. *Murray v. Dutcavich*, No. 17-CV-09121, 2023 WL 4303800, at *5 (S.D.N.Y. June 30, 2023). Plaintiff's speculation of discriminatory intent, without any supporting evidence, is insufficient to establish a *prima facie* case under either the ADA or the Rehabilitation Act.

2. Legitimate, Non-Discriminatory Reasons

In any event, Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant asserts that Plaintiff was terminated for two reasons: first, Plaintiff's poor performance required other BOL employees to take on his budgetary duties (56.1 Stmt. ¶¶ 36-37);

second, Plaintiff uploaded to a public shared drive the personal information of County employees, including the last four digits of their social security numbers (*id.* ¶ 65). Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's termination. *Shabazz v. Montefiore Med. Ctr.*, No. 99-CV-09311, 2002 WL 31132886, at *3 (S.D.N.Y. Sept. 26, 2002) (finding that "two serious computer system errors, caused by [p]laintiff . . . coupled with her poor record of work performance" served as a legitimate, non-discriminatory reason for termination).

### 3. Pretext

"To show pretext, a plaintiff must submit admissible evidence showing circumstances to permit a rational finder of fact to find that the defendant's conduct was motivated in whole or in part by discrimination." *Osekavage*, 619 F. Supp. 3d at 390. "The admissible evidence offered by a plaintiff must go beyond self-serving and conclusory allegations that the defendants' proffered reasons were false." *Id.* Plaintiff argues that Defendant's proffered reasons for termination are pretextual because Plaintiff was unaware of any complaints about his job performance and that if Plaintiff was truly incompetent, "the BOL would have fired him at that point rather than giving his responsibilities to an individual he supervised." (Pl. Br. at 9-10). In support of this arguments, Plaintiff cites only to the conclusory and self-serving allegations of his affidavit. (*Id.*). Plaintiff has "made no attempt to square [his] own speculative, and subjective, testimony with the hard evidence adduced during discovery." *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009). Plaintiff has failed to meet its burden in showing that Defendant's proffered legitimate, non-discriminatory reasons for his termination were a pretext for discrimination.

Plaintiff has failed to establish "regarded as" disability discrimination claims under the ADA. Accordingly, the Court grants Defendant summary judgment on Plaintiff's "regarded as" disability discrimination claims under the ADA.

II.     Plaintiff's Rehabilitation Act Claims

A.  The Rehabilitation Act's Federal Funding Requirement

Section 504(a) of the Rehabilitation Act provides, *inter alia*, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ***under any program or activity receiving Federal financial assistance***." 29 U.S.C. § 794(a) (emphasis added). "Program or activity" is defined as "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C.A. § 794(b)(1)(A). Plaintiff bears the burden, to survive a motion for summary judgment on his Rehabilitation Act claims, of establishing that the BOL received federal financial assistance during his employment from September 2014 through April 2018. *See Henry v. McDonald*, 531 F. Supp. 3d 573, 588 (E.D.N.Y. 2021) (citing *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994)).

Defendant argues, relying on *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87 (2d Cir. 2021), that Plaintiff's claims under the Rehabilitation Act fail as a matter of law because Plaintiff cannot establish that the BOL is a "program or activity" under the Act and itself received federal funds during the relevant period. (Def. Br. at 6-8). Plaintiff argues that the BOL is an "arm, department, and/or instrumentality of Westchester County, which receives federal funds, and thus the BOL has waived immunity from suit." (Pl. Br. at 7-8). The Second Circuit, in *T.W.*, held that the phrase "department, agency, special purpose district, or other instrumentality" could not be read to include an entire branch of a State or local government. 996 F.3d at 98. The Second Circuit reasoned that the Rehabilitation Act "'was not, so far as we are able to determine, . . . intended to sweep in the whole state or local government[.]'" *Id.* (quoting *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991).

13

It is undisputed that the BOL "is the legislative, policy-making branch of Westchester County." (56.1 Stmt. ¶ 2). It is further undisputed that "[d]uring the dates and times relevant to this action, the BOL's budget was one hundred percent funded by County tax revenues." (*Id.*). Defendant cites, in support of these facts, to the affidavit of Westchester County's Budget Director—Lawrence C. Soule III—who states that he is "familiar with the individual budgets of all County departments, including the [BOL]" and that "from September 2014 through April 2018, the BOL's budget was one hundred percent funded by County tax revenues." (Micciche Decl., Ex. G ¶ 3). Defendant also cites to its Requests for Admission, which ask Plaintiff to admit, *inter alia*, that "[t]he BOL does not receive federal funding." (*Id.*, Ex. S at 7). Plaintiff has failed to respond to Defendant's Requests for Admission and has not moved the Court to withdraw this admission. Plaintiff's admission regarding the BOL's funding is therefore deemed "conclusively established" pursuant to Fed. R. Civ. P. 36(b). *See Gibson*, 391 F. Supp. 3d at 250.

Just as the Second Circuit held that New York's judicial branch "is not a department or an agency" within the meaning of the Rehabilitation Act, the BOL—the County's legislative branch—is likewise not a department, agency, or instrumentality of Westchester County. *T.W.*, 996 F.3d at 98. Westchester County's receipt of federal funds therefore does not waive the BOL's immunity from suit. Accordingly, the BOL "has not waived its immunity under the Rehabilitation Act and is therefore not amenable to suit." *Id.* at 101. Separately, and in any event, Plaintiff has failed to satisfy his burden of proof that the BOL actually received federal funds during the time period relevant to this action. Plaintiff offers partial hearsay copies of the Westchester County operating budget reports for the period 2014 through 2018. (Santos Decl. I, Exs. 1-5). Several things are evident. First, the County budget documents are not in admissible form and what is presented is only an excerpted portion of the County's operating budget reports for the relevant

period. (*Id.*). Second, annexing the excerpted budget documents to an attorney declaration—as Plaintiff has done—does nothing to support the authenticity or admissibility of the documents. Third, while it is clear that Westchester County receives some federal funds, it is unclear whether any of those federal funds went to the BOL. The budget reports merely state that Westchester County received "federal and state aid" which went to "social services" and "other departments and accounts." (*Id.*). Whether that includes the BOL is not evident from the budget reports submitted by Plaintiff. Simply put, the budget reports Plaintiff submitted do not specifically controvert Defendant's contention—which is supported by an affidavit from the County's Budget Director—that the BOL "was one hundred percent funded by County tax revenues" from 2014 through 2018. (Micciche Decl., Ex. G ¶ 3).

The Court holds that Plaintiff has failed to establish that the BOL received federal financial assistance from 2014 through 2018 and thus Plaintiff has not shown that the BOL has waived immunity under § 504 of the Rehabilitation Act. Accordingly, the Court grants Defendant summary judgment on Plaintiff's claims under the Rehabilitation Act.

## B. Rehabilitation Act Disability Discrimination Claim

In any event, and separately, Plaintiff has failed to meet his burden of proof with regards to his disability discrimination claim and rehabilitation claim under the Rehabilitation Act. "Because the standards under both [the ADA and Rehabilitation Act] are generally the same and the subtle distinctions between the statutes are not implicated in this case, [courts in the Second Circuit] treat claims under the two statutes identically." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Plaintiff has, as discussed *supra*, failed to establish a *prima facie* case of disability discrimination because he has failed to show that Boykin had knowledge of Plaintiff's back pain or his leave request. Furthermore, Defendant has offered a legitimate, non-

15

discriminatory reason—poor work performance and the publication of employee information on a public shared drive—for Plaintiff's termination, and Plaintiff has failed to show that this reason was pretext for discrimination.

Accordingly, the Court grants Defendant summary judgment on Plaintiff's discrimination claim under the Rehabilitation Act.

### C.  Rehabilitation Act Retaliation Claim

To make out a *prima facie* case of retaliation under the Rehabilitation Act, a plaintiff must establish "by a preponderance of the evidence that (1) [he] engaged in an activity protected by the Rehabilitation Act; (2) the employer was aware of that activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 246 (S.D.N.Y. 2020) (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). "Protected activities include requests for reasonable accommodation." *Warmin v. New York City Dep't of Educ.*, No. 16-CV-08044, 2021 WL 517777, at *7 (S.D.N.Y. Feb. 11, 2021). Plaintiff argues that his termination "was retaliation for his request for a reasonable accommodation, i.e. taking time off in August 2018 for back surgery." (Pl. Br. at 10). As discussed *supra*, Plaintiff has failed to put forward any evidence showing that Boykin was aware of this protected activity. Plaintiff, to the contrary, admits that Boykin and Power never discussed Plaintiff or his planned leave for surgery with Friedman. (56.1 Stmt. ¶ 55). Plaintiff has additionally failed to put forward any facts at all that would permit a rational trier of fact to conclude that a causal connection exists between his termination and his request for leave.

Accordingly, the Court grants Defendant summary judgment on Plaintiff's retaliation claim under the Rehabilitation Act.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's Second Amended Complaint is DISMISSED with prejudice.

The Clerk of Court is respectfully directed to close this case and terminate the motion sequence pending at Doc. 197.

**SO ORDERED:**

Dated:    White Plains, New York
          July 31, 2023

_____
PHILIP M. HALPERN
United States District Judge

17